UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BONDO BERELIDZE,

                    Petitioner,

        v.

KRISTI NOEM, Secretary of U.S.
Department of Homeland Security, et al.,

                    Respondents.

CASE NO. 2:26-cv-00618-TL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus. Dkt. No. 1. Having reviewed the petition, Respondents' Return (Dkt. No. 4), Petitioner's Traverse (Dkt. No. 7), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the petition.

## I.    BACKGROUND

Petitioner Bondo Berelidze is a 38-year-old citizen and national of Georgia. Dkt. No. 1 ¶ 19. Respondents are officials of the United States Department of Homeland Security ("DHS") and Department of Justice, as well as Bruce Scott, the "Warden of the Northwest ICE Processing

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Center ['NWIPC'], the privately-operated immigration detention center where the Petitioner [is] being detained."[1] *Id.* ¶¶ 9–13.

**A.      Petitioner's Entry into the United States (2021–2022)**

On or about November 11, 2021, Petitioner entered the United States without inspection. Department of Homeland Security records indicate that Petitioner was encountered and arrested in Arizona on or about November 15, 2021. *See* Dkt. No. 6-1 (Record of Deportable/Inadmissible Alien) at 2–3. On November 15, 2021, Petitioner was processed for expedited removal pursuant to Section 235(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(1), and found to be inadmissible under INA Section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Dkt. No. 6-2 (Notice and Order of Expedited Removal) at 2. During expedited removal proceedings, Petitioner expressed fear of returning to Georgia. Dkt. No. 5 (Douglas Decl.) ¶ 5. On January 5, 2022, United States Citizenship and Immigration Services ("USCIS") conducted a credible-fear interview (*id.* ¶ 6), during which Petitioner demonstrated a credible fear of persecution or torture (*see* Dkt. No. 6-3 (Notice to Appear) at 2).

On February 3, 2022, Petitioner, then located at the Immigration and Customs Enforcement ("ICE") Moshannon Valley Processing Center in Phillipsburg, Pennsylvania, was served with a Notice to Appear ("NTA"). Dkt. No. 6-3. The Notice ordered Petitioner to appear before an immigration judge at Cleveland Immigration Court in Cleveland, Ohio, on a date to be determined. *Id.* at 2–3.

On February 14, 2022, a DHS officer issued a Notice of Custody Determination finding that Petitioner could be released "[p]ursuant to the authority contained in section 236 of the

---

[1] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations[.]" Dkt. No. 6-4 at 2; *see* 8 U.S.C. § 1226. On that same day, Petitioner subsequently was released on his own recognizance under an Order of Release on Recognizance ("OREC") "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8, Code of Federal Regulations[.]" Dkt. No. 6-5 (OREC) at 2. Petitioner's release was conditioned on his compliance with requirements enumerated in his OREC. *See id.* at 2, 4.

There is no allegation that Petitioner ever failed to comply with any of these conditions. *See generally* Dkt. No. 5.

**B.    Petitioner's Subsequent Encounter with DHS (2026)**

In February 2026, Petitioner, now employed as a commercial truck driver, "was abruptly detained in Montana following a routine inspection stop at a weigh station." Dkt. No. 1 ¶ 22. State officials "turned [Petitioner] over the Department of Homeland Security (DHS)." *Id.* DHS records indicate that on or about February 6, 2026, Montana Motor Carrier Services officers encountered Petitioner at a weigh station on Interstate 90 near Laurel, Montana. Dkt. No. 6-6 (Report of Deportable/Inadmissible Alien) at 4. Because Petitioner "was presenting foreign documents and failed the English language interview," the state officers contacted the United States Border Patrol, who subsequently questioned Petitioner, then arrested and detained him. *See id.*; *see also* Dkt. No. 6-7 (Warrant for Arrest of Alien) at 2. After his arrest in Montana, Petitioner was transported to the NWIPC in Tacoma, Washington, where he is presently detained. Dkt. No. 1 ¶ 23.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### III.    DISCUSSION

The Parties disagree as to which statute governs Petitioner's detention. Petitioner asserts that his re-detention—that is, his 2026 arrest and subsequent transfer to NWIPC—is governed by Section 236 of the INA, 8 U.S.C. § 1226. *See* Dkt. No. 1 ¶ 31; Dkt. No. 7 at 4. Respondents assert that "ICE detains Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A)." Dkt. No. 4 at 3. Very generally speaking, noncitizens subject to Section 1225(b) "shall be detained" for further proceedings, whereas other noncitizens in removal proceedings may, under Section 1226(a), be either detained or conditionally released at the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1225(b)(1)(B)(ii), 1225(b)(2)(A); *see id.* § 1226(a). The Supreme Court has held that the language of Section 1225(b) subjects noncitizens within its purview to "mandat[ory] detention" for the duration of removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 283 (2018).

The record in this case clearly indicates that, when DHS released Petitioner from detention on his own recognizance in February 2022, it did so "[p]ursuant to the authority contained in section 236 . . . ." Dkt. No. 6-4 at 2; Dkt. No. 6-5 at 2. The first question before the Court is, therefore, whether Respondents have a legal and/or factual basis for switching their statutory authority for detaining Petitioner from Section 1226, as the contemporaneous documentation indicates, to Section 1225(b)(2)(A), as they now claim. If Respondents do not have such a legal and/or factual basis—that is, if Section 1226 still governs Petitioner's re-detention—then the second question is whether Respondents provided Petitioner with sufficient process prior to re-detaining him. Amidst a slew of case law in this District and this Circuit, these are not difficult questions: The answer to both is no.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

**A.      Statutory Basis for Petitioner's Detention**

Several circumstances point to a determination that Petitioner's detention is governed by Section 1226, not Section 1225(b)(2). First, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. C25-2054, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025)). Here, the record demonstrates that Respondents have in fact treated Petitioner as a noncitizen subject to discretionary detention under Section 1226 since at least as recently as February 14, 2022. *See* Dkt. No. 6-5 at 2. When ICE released Petitioner on recognizance that day, it did so "[i]n accordance with section 236 of the Immigration and Nationality Act . . . ."*Id.*[2] For Respondents to now assert otherwise is to contradict their own prior determination.

Second, as Respondents point out, the Supreme Court has held that "the sole means of release from detention pursuant to Section 1225(b) is temporary parole 'for urgent humanitarian reasons or significant public benefit," under 8 U.S.C. § 1182(d)(5)(A). Dkt. No. 4 at 4 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018)). But Petitioner was released on an OREC citing "section 236." Dkt. No. 63. The Ninth Circuit has specifically found that a noncitizen who is "release[d] on recognizance" using this particular form is not "parole[d] into the United States under § 1182(d)(5)(A)"—that is, parole and release-on-recognizance are separate and distinct processes. *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (citation modified). Putting this all together, then, it follows that DHS previously released Petitioner by a process *other* than "the sole means of release from detention pursuant to Section 1225(b)."

---

[2] Section 236 of the INA is codified at 8 U.S.C. § 1226.

Unless DHS's release of Petitioner was unlawful (which Respondents do not allege), he could not have been subject to mandatory detention under § 1225 at that time or at any time while his OREC remained in force.

Third, upon examination, Respondents' position collapses under its internal inconsistencies. Respondents' argument presumes, against all evidence to the contrary, that Petitioner has *never* been subject to discretionary detention under Section 1226. *See* Dkt. No. 4 at 3. But as discussed above, the Court rejects such a presumption: The nature of Petitioner's release, as demonstrated by the paperwork memorializing it, clearly indicates that Petitioner's OREC was governed by Section 1226, a legal impossibility if he was detained under Section 1225(b) at that time. How, then, did Petitioner's detention come to be governed by Section 1225(b)(2)(A)?

Respondents provide an unsatisfying answer. Respondents' position is only tenable where two circumstances obtain: First, the INA must provide for DHS to arbitrarily "revert" a noncitizen's classification from a category subject to discretionary detention under Section 1226 to a category subject to mandatory detention under Section 1225(b)(2)(A). Second, such a "reversion" must serve to *vacate* the OREC, such that the liberty interest that a noncitizen obtained when OREC was granted is erased and considered to have never existed. Respondents' briefing does not demonstrate that either of these circumstances does—or even could—exist.

Respondents attempt to substantiate their position by citing to a Fifth Circuit case, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026). *See* Dkt. No. 4 at 3. This case does not help their position. For one thing, we are in the Ninth Circuit. *Buenrostro-Mendez* is not binding authority here. Further, the Court does not consider it persuasive, because it contradicts the overwhelming majority of decisions made by other courts that have considered whether noncitizens arrested after years of presence in the United States might be subject to detention

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

under Section 1225(b)(2)(A). *See, e.g.*, *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1324–36 (W.D. Wash. 2025); *Bautista v. Santacruz*, No. C25-1873, 2025 WL 3713987, at *11–13 (C.D. Cal. Dec. 18, 2025); *Quinonez Torres v. Hermosillo*, No. C26-76, 2026 WL 547591, at *5 (W.D. Wash. Feb. 23, 2026); *N.A. v. LaRose*, No. C25-3028, 2025 WL 3512412, at *5 (S.D. Cal. Dec. 8, 2025). Among these is decisions is a preliminary finding by the Seventh Circuit (the only other Circuit Court to have considered the question), *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025).

Even if the Court agreed with the holding in *Buenrostro-Mendez*, it has little or no application here. The two petitioners in that case entered the United States without inspection—in 2001 and 2009, respectively—and, as described in the opinion, were not encountered by DHS until 2025. 166 F.4th at 500. Here, in contrast, Petitioner was encountered and arrested within days after he entered the United States. *See* Dkt. No. 6-1 at 3. He was processed for expedited removal under § 1225(b)(1) (*see* Dkt. No. 6-2 at 2), expressed a credible fear of return (Dkt. No. 63 at 2), and was released on his own recognizance to await full removal proceedings under 8 U.S.C. 1182 (*see id.*; Dkt. No. 6-4 at 2). As Petitioner argues, *Buenrostro-Mendez* "did not involve the revocation of an already-issued § 236 OREC, did not address whether DHS may rescind a previously granted release without written notice and hearing, and did not hold that due process disappears once the Government invokes the label 'applicant for admission.'" Dkt. No. 7 at 6. All of these arguments are persuasive. At a more fundamental level, though, the plain language of Section 1225(b)(2) exempts Petitioner, as a person eligible for expedited removal at the time of his initial detention, from the application of Section 1225(b)(2)(A). *See* 8 U.S.C. 1225(b)(2)(B) ("Subparagraph (A) shall not apply to an alien . . . to whom paragraph (1) applies."); *see also* 8 U.S.C. 1225(b)(1)(A)(i), (iii) (authorizing expedited removal proceedings for narrow categories of noncitizens). If there is a case to be made that Petitioner is subject to

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

mandatory detention under any provision of Section 1225(b), it is not subsection 1225(b)(2)(A). But that is the only case for mandatory detention Respondents attempt to make. Because Respondents' position is untenable, the Court will assume Petitioner's present detention is governed by Section 1226(c), as evidenced by the documents in the record.

**B.    Due Process**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment guarantee of due process applies in deportation proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). In addition, the Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process.").

Courts in this District and Circuit have consistently concluded that a noncitizen obtains a liberty interest when they have been released from immigration detention. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025). "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe*, 787 F. Supp. 3d at 1093 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). When evaluating an alleged deprivation of a noncitizen's liberty interest, courts apply the three-part test established by the Supreme Court in *Mathews*. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022). "Determining whether a

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

governmental action violates 'the specific dictates of due process generally requires consideration of three distinct factors.'" *Tzafir v. Bondi*, No. C25-2070, 2025 WL 3724708, at *2 (W.D. Wash. Dec. 24, 2025) (quoting *Mathews*, 424 U.S. at 335). The Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

**1.      The Private Interest Affected by the Official Action**

Petitioner argues that his liberty interest "is exceptionally strong." Dkt. No. 7 at 8. Petitioner "had been released on OREC, living in the community, and complying with ICE supervision for nearly four years." *Id.* "The OREC was not an informal act of grace; it was a formal custody determination by DHS under § 236, supported by written conditions and acknowledged by both the agency and Petitioner." *Id.* For their part, Respondents do not substantively rebut Petitioner's assertions and instead merely "acknowledge that Petitioner had some liberty interest in his continued freedom from detention while on release. However, that liberty interest was conditional." Dkt. No. 4 at 7. Viewed conceptually, Petitioner has presented facts specific to his case—his custody determination, his four years of uncontroversial freedom, his establishment in the community—while Respondents have presented in rebuttal an adjective that applies to any and all noncitizens on OREC: "conditional." Respondents' position is unsubstantial and unpersuasive. For one thing, rhetoric—and certainly rhetoric reduced into a single word—cannot overcome facts. For another, a liberty interest can be exceptionally strong *and* conditional; the latter does not negate the former. Finally, that Petitioner's liberty was "conditional" is a non-argument when he undisputedly complied with all the conditions required

in order to keep it. Absent anything further from Respondents, the Court concludes that Petitioner's "is a fundamental interest that must be accorded significant weight." *Ledesma Gonzalez*, 808 F. Supp. 3d at 1202.

The first *Mathews* factor weighs in favor of Petitioner.

### 2.    Risk of Erroneous Deprivation Through Procedures Used

Petitioner asserts that his re-detention was based "exclusively on: routine database queries; internal ICE review; no neutral adjudication; no opportunity for [Petitioner] to be heard; [and] no assessment of alternatives." Dkt. No. 7 at 8–9. Again, Respondents counterpunch weakly. Respondents assert generally that "a pre-deprivation hearing is not appropriate in every situation." Dkt. No. 4 at 7 (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). And Respondents claim, implausibly, that "there was no opportunity for a pre-deprivation hearing." *Id.*

Neither of these is convincing. As to their first point, Respondents misconstrue *Zinermon*, which (they acknowledge) emphasizes that the Supreme "Court usually has held that the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." 494 U.S. at 127. As this Court has previously explained, in a case with analogous facts:

> *Zinermon* does not suggest there *may be special cases* [where a pre-detention hearing is not required]; rather, it discusses a single, discrete "special case" known as "the *Parratt* rule" and represented by the cases *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984). The *Parratt* rule applies to a unique subset of deprivations where there is no practical way that "predeprivation procedural safeguards *could* address the risk of deprivations" because the nature of the deprivation is such that it cannot be foreseen by the state. *Id.* at 132 (emphasis added). In *Parratt*, the deprivation in question was the negligent loss of a person's property while he was in state custody, and in *Hudson*, the deprivation resulted from unauthorized and tortious conduct by a state employee. *Zinermon*, 494 U.S. at 129–30. Under the

> unusual circumstances where pre-deprivation process is not practicable "because of the random and unpredictable nature of the deprivation" at issue, the *Parratt* rule holds that a tort remedy provides the process that is due. *Id.* at 132.
>
> The *Parratt* rule obviously does not apply here. And, while a portion of the *Zinermon* opinion not cited by Respondents acknowledges a broader subset of "circumstances" under which the Supreme Court has found that "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process," Respondents do not point to any relevant statutory provision or tort remedy (and in any case, none of *Zinermon's* "circumstances" involved a risk of confinement).

*Sarwari v. Wamsley*, C26-121, 2026 WL 279968, at *4–5 (W.D. Wash. Feb. 3, 2026). It is an especially unpersuasive use of case law that reduces a complex analysis into a single, oversimplified sentence. The reasoning in *Zinermon* could never support Respondents' conclusion that they were not required to provide pre-deprivation process for Petitioner. What is more, not only have Respondents oversimplified *Zinermon*, they have twisted the case's meaning: Just as in *Sarwari*, Respondents' briefing expands "a special case" (the singular, obviously inapplicable fact pattern in *Zinermon*) to "special case[s]" (that "may" exist).[3] Dkt. No. 4 at 7. In other words, Respondents have stretched *Zinermon* well past its breaking point. As it stated in *Sarwari*, "[t]he Court expects better[.]" 2026 WL 279968 at *8 (addressing distortions of *Zinermon* and other cases and warning that "[f]uture such misrepresentations may expose Respondents and their counsel to sanctions.")

As to Respondents' second point—that they did not have an opportunity to provide Petitioner with sufficient opportunity to be heard—it is absurd. Surely the "flexibility" in due

---

[3] Even if Respondents had cited authority that *did* support their claim that a pre-detention hearing is not always required (which they have not), it is one thing to identify a rule and another to apply it. Whether or not there are circumstances in which a pre-detention hearing might not be required, Respondents have not demonstrated the impropriety of a pre-deprivation hearing *in Petitioner's case*.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11

process that Respondents tout (*id.* at 6) means that due process was not restricted *only* to what could have been provided in the seconds it took for a state agent to transfer physical custody of Petitioner to a federal agent. Respondents' assumptions here—(1) that the exclusive opportunity they had to provide due process was the brief period after Montana officials unhanded Petitioner but before Border Patrol officials seized him; and (2) that, having missed this exceedingly short window during which to provide constitutionally required process, they were absolved from having to provide it at all—are both disingenuous and dangerous. As presented by Respondents, Petitioner is detained at NWIPC because a Montana Motor Carrier Services Officer deemed his English-language skills substandard. Respondents do not even attempt to explain how this purported violation represents a proper basis for his arrest and subsequent detention, and their failure to examine the issue upon receiving Petitioner into custody is indicative of the flawed process they provided to Petitioner. Nor does it escape the Court's attention that the declaration filed by the deportation officer in support of Respondents' Return is silent on the assertion made in Respondents' brief that "there was no opportunity for a pre-deprivation hearing" (Dkt. No. 4 at 7), leaving the assertion completely unsupported by any evidence.

Therefore, the second *Mathews* factor weighs in favor of Petitioner.

### 3.    Government Interest and Administrative Burdens

Petitioner asserts that "[p]roviding [Petitioner] with written notice and a prompt pre-deprivation hearing would have imposed minimal administrative burden." Dkt. No. 7 at 9. This is especially so, Petitioner argues, because "ICE already conducted a custody review, issued paperwork, and executed an arrest." *Id.* As with the first two *Mathews* factors, Respondents respond only with rules they do not meaningfully apply. Quoting the Ninth Circuit in *Rodriguez Diaz*, Respondents invoke "the government['s] strong interest in preventing [noncitizens] from remaining in the United States in violation of our law.'" Dkt. No. 4 at 7 (citation modified)

(quoting 53 F.4th at 1208). Additionally, Respondents assert that "the Ninth Circuit has emphasized that the *Mathews* test and procedural safeguards 'must account for the heightened government interest in the immigration detention context.'" *Id.* (quoting *Rodriguez Diaz*, 53 F.4th at 1206). But nothing in Respondents' discussion actually performs the accounting that the Ninth Circuit demands. Respondents suggest, without arguing, that providing Petitioner with constitutionally required process would "unnecessar[ily] delay" "immigration proceedings." Dkt. No. 4 at 8. Not only is this line of argument logically flawed, it requires the Court to find Constitutional protections unnecessary, which the Court declines to do.

Respondents provide no real argument as to why they should not have been required to provide Petitioner with more process than they did, and the Court will not endeavor to supply one. "While the Court acknowledges that providing Petitioner with a hearing before re-detaining him would require some expense of money and time, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake." *Marquez Rujano v. U.S. Immigr. & Customs Enforcement*, No. C26-325, 2026 WL 764150, at *4 (W.D. Wash. Mar. 18, 2026).

Accordingly, the third *Mathews* factor weighs in favor of Petitioner.

\* \* \*

Having applied the *Mathews* factors, the Court finds that Respondents have failed to demonstrate a constitutionally valid deprivation of Petitioner's liberty interest. Therefore, Petitioner is unlawfully detained, and he is entitled to habeas relief.

**C.      Remedy**

Petitioner requests several forms of relief. First, Petitioner seeks his immediate release from custody. Dkt. No. 1 at 11. Having determined that Petitioner's detention is unlawful, the Court GRANTS this request. *See, e.g.*, *Paz Pernia v. Noem*, No. C26-581, 2026 WL 746567, at *3 (W.D. Wash. Mar. 17, 2026) (ordering immediate release after determining unlawfully revoked

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 13

OREC); *Garane v. Noem*, No. C26-538, 2026 WL 746565, at *5 (W.D. Wash. Mar. 17, 2026) (same).

Second, Petitioner seeks several forms of injunctive relief. Petitioner seeks to "permanently enjoin his re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 1 at 11. And Petitioner seeks to "[e]njoin Respondents from placing GPS ankle monitors on Petitioner upon his release, absent clear and convincing evidence that Petitioner is a flight risk or danger a danger to the community and that no other alternatives would mitigate those risks." Dkt. No. 1 at 11.

"Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331 (*see* Dkt. No. 1 ¶ 14), the Court has 'the authority to both entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Cetino Garcia v. Noem*, No. C26-556, 2026 WL 733798, at *5 (W.D. Wash. Mar. 16, 2026) (quoting *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020)). But "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 20023) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Petitioner does not "allege that re-detention is likely if []he were to be released, that such detention is likely to occur without compliance with the government's regulations or policies, or that Respondents will place GPS monitoring devices on h[im] without justification." *Cetino Garcia*, 2026 WL 733798, at *5. Without any argument or evidence to indicate that he might again be illegally re-detained, or that

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 14

he might be subjected to an ankle monitor, Petitioner's "requests constitute nothing more than a 'mere possibility' of harm that do not entitle h[im] to relief." *Id.* (quoting *Cummings*, 316 F.3d at 887)). Further, the Court cannot conclude on the record before it that due process requires a pre-detention hearing regardless of circumstances. *See Le v. Bondi*, No. C25-2454, 2026 WL 309239, at *6 (W.D. Wash. Feb. 5, 2026). Therefore, the Court DENIES Petitioner's requests for injunctive relief.

Finally, Petitioner seeks a declaration that "Petitioner's re-detention while removal proceedings are ongoing without first proving an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment." Dkt. No. 1 at 11. For the same reason that the Court denies Petitioner's requests for injunctive relief, the Court DENIES Petitioner's request for declaratory relief.

## IV.   CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)   Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a)   SHALL release Petitioner from detention **no later than 5:00 p.m. on April 2, 2026,** under the provisions of his OREC;

(b)   SHALL submit to the Court, **within forty-eight (48) hours** of this order, a status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2)   Petitioner's requests for injunctive relief are DENIED;

(3)   Petitioner's request for declaratory relief is DENIED;

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 15

(4)      Any motion requesting fees should be filed within the deadlines set by the Equal

Access to Justice Act, 28 U.S.C. § 2412.

Dated this 31st day of March, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 16